IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MATTHEW REEVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CASE NO. 2:20-CV-027-RAH |
| ) | [WO] |
| JEFFERSON S. DUNN, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Matthew Reeves (hereinafter "Reeves") is an Alabama death-row inmate in the custody of the Alabama Department of Corrections ("ADOC"). At present, Reeves has no scheduled execution date. On January 10, 2020, Reeves filed a complaint under 42 U.S.C. § 1983, asserting two causes of action against Defendants Jefferson Dunn, Commissioner, ADOC; and Cynthia Stewart, Warden, Holman Correctional Facility, in their official capacities, for deprivation of his constitutional rights under the Eighth Amendment to the United States Constitution and his rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (ADA). Reeves seeks declaratory and injunctive relief. (Doc. 1.)

This matter is before the Court on Defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. (Doc.

11.)  The motion has been fully briefed and is ripe for review.  Defendants' motion to dismiss is due to be granted in part and denied in part.

A. **Reeves' Capital Litigation History**

In 1998, Reeves was convicted of the capital murder of Willie Johnson.  The murder was made capital because it was committed during a robbery in the first degree, a violation of Ala. Code § 13A–5–40(a)(2).  By a vote of 10–2, the jury recommended that Reeves be sentenced to death for this capital murder conviction.  The trial court followed the jury's recommendation and sentenced Reeves to death.  The Alabama Court of Criminal Appeals ("ACCA") affirmed Reeves' conviction and sentence.  *Reeves v. State*, 807 So. 2d 18 (Ala. Crim. App. 2000). The Alabama Supreme Court denied certiorari review, and the ACCA issued a certificate of judgment on June 8, 2001.  *Id.*  His direct appeal concluded on November 13, 2001, when the United States Supreme Court denied certiorari review. *Reeves v. Alabama*, 534 U.S. 1026 (2001).

In October 2002, Reeves filed a Rule 32 Petition in the trial court for collateral relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure.  Reeves amended his Rule 32 Petition twice, first in February 2003 and again in August 2006.[1]  On November 28-29, 2006, the Rule 32 court held an evidentiary hearing on Reeves' claims.  *See Reeves v. State*, 226 So. 3d 711, 722 (Ala. Crim. App. 2016).  At this hearing, Reeves' medical expert, Dr. John Goff, testified that Reeves suffered from significantly subaverage

---

[1]  Reeves raised an *Atkins* claim in his Rule 32 Petition.  In *Atkins v. Virginia*, 536 U.S. 304 (2002), the Supreme Court held that execution of an individual who is intellectually disabled violates the Eighth Amendment.  Reeves claimed that because he was "mentally retarded," a term now more commonly referred to as "intellectually disabled," *Atkins* prohibited his execution.

2

intellectual functioning. On the other hand, the State's expert, Dr. Glen King, testified that Reeves falls within the borderline range of intellectual functioning. In the final analysis, the Rule 32 court rejected Reeves' intellectual disability claim and denied his Rule 32 Petition. Reeves appealed. Upon review of the Rule 32 court's analysis of Reeves' intellectual disability claim, the ACCA approved, stating:

> . . . The circuit court, after considering all the evidence presented at the hearing, and after observing Reeves when Reeves testified at a pretrial hearing, resolved the conflicting expert testimony as to Reeves's intellectual functioning adversely to Reeves, finding that, although Reeves's intellectual functioning was subaverage, it was not significantly subaverage as required to meet the first prong of intellectual disability. "Conflicting evidence is always a question for the finder of fact to determine, and a verdict rendered thereon will not be disturbed on appeal." *Padgett v. State*, 668 So.2d 78, 86 (Ala. Crim. App. 1995). There is ample evidence in the record to support the circuit court's finding and we will not disturb the circuit court's resolution of the conflicting expert testimony. Therefore, we find no abuse of discretion on the part of the circuit court in concluding that Reeves failed to prove by a preponderance of the evidence that he suffered from significantly subaverage intellectual functioning.

*Reeves*, 226 So. 3d at 741.

The ACCA also found that the Rule 32 court did not abuse its discretion in finding that Reeves failed to prove by a preponderance of the evidence that he suffered from significant deficits in at least two areas of adaptative functioning. *Id.* The ACCA noted that the Rule 32 court considered the conflicting expert testimony concerning Reeves' adaptive functioning and "resolved the conflicts adversely to Reeves." *Id.* at 743 (citation omitted). Finally, the ACCA concluded that the Rule 32 court properly considered evidence regarding Reeves' adaptive functioning other than that expert testimony—

3

such as Reeves's technical abilities in brick masonry, welding, and automobile mechanics; Reeves's ability to work construction and do so reliably when he was not around his brother, Julius; Reeves's participation in a drug-sale enterprise in which he was able to make thousands of dollars a week that he then used to purchase personal items and a car; and particularly Reeves's cold and calculated actions surrounding the murder, including planning the robbery with his codefendants, hiding incriminating evidence after he had shot the victim, splitting the proceeds of the robbery with his codefendants, and bragging about the murder, claiming that he would earn a "teardrop"—a gang tattoo indicating that a gang member had killed someone—for the murder. . . . There is ample evidence in the record to support the circuit court's finding that Reeves did not suffer from significant deficits in at least two areas of adaptive functioning, and we will not disturb the circuit court's resolution of the conflicting evidence. Therefore, we find no abuse of discretion on the part of the circuit court in finding that Reeves failed to prove by a preponderance of the evidence that he suffered from significant deficits in at least two areas of adaptive functioning.

*Id.* Subsequently, the Alabama Supreme Court denied certiorari, as did the U.S. Supreme Court. *Reeves v. Alabama*, ____ U.S. ____, 138 S.Ct. 22 (2017) (Sotomayor, J., dissenting).

Reeves then filed a federal habeas corpus petition, pursuant to 28 U.S.C. § 2254, in the Southern District of Alabama and raised an *Atkins* claim therein as he had in the state habeas proceeding. Ultimately, the district court denied Reeves' habeas petition, concluding that he was entitled to no relief on any of his claims; however, the district court granted Reeves a Certificate of Appealability (COA) with respect to his claim that his trial counsel was ineffective for failing to hire an expert to investigate his intellectual disability. *Reeves v. Dunn*, Case No. 1:17-cv-061-KD (S.D. Ala. Jan. 8, 2019), Doc. 29.

In May 2019, Reeves appealed the denial of his habeas petition to the Eleventh Circuit. *See Reeves v. Comm'r Ala. Dep't of Corrs.*, No. 19-11779-P (11th Cir. May 7, 2019). In September 2019, the Eleventh Circuit expanded the COA to include the following issues:

> . . . (1) whether Mr. Reeves is intellectually disabled and therefore ineligible for the death penalty; (2) whether trial counsel rendered ineffective assistance by not conducting a sufficient mitigation investigation and not hiring a defense mitigation expert; and (3) whether the Alabama Supreme Court incorrectly held that trial counsel's testimony is required to establish an ineffectiveness claim under *Strickland v. Washington*, 466 U.S. 668 (1984).

*Id.* (11th Cir. Sept. 9, 2019). This matter remains pending before the Eleventh Circuit, which will conduct oral argument on the foregoing issues on August 19, 2020. *See Reeves v. Comm'r Ala. Dep't of Corrs.*, No. 19-11779-P (11th Cir. May 20, 2020).

**B.    Backdrop of the present action**

*1. Nitrogen hypoxia became a second alternative method of execution*

On July 1, 2002, lethal injection replaced electrocution as Alabama's primary method of execution, and therefore electrocution became an alternative execution method.[2] Ala. Code § 15-18-82.1(a). In March 2018, the Alabama Legislature added nitrogen hypoxia as a second alternative execution method, effective as of June 1, 2018.[3] Those who were subject to execution by lethal injection could choose nitrogen hypoxia as

---

[2] Those convicted prior to July 1, 2002, could choose electrocution as their execution method by following the prescribed procedure. *See* Ala. Code § 15-18-82.1(b)(1).

[3] *See* 2018 Alabama Laws Act 2018-353 (S.B. 272).

5

their execution method by following the prescribed procedure outlined in Ala. Code § 15-18-82(b)(2):

> The election for death by nitrogen hypoxia is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death. If a certificate of judgment is issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date.  If a warrant of execution is pending on June 1, 2018, or if a warrant is issued within 30 days of that date, the person who is the subject of the warrant shall waive election of nitrogen hypoxia as the method of execution unless a written election signed by the person is submitted to the warden of the correctional facility not later than 48 hours after June 1, 2018, or after the warrant is issued, whichever is later.

*Id.*

As it concerns Reeves, the certificate of judgment on his conviction issued prior to June 1, 2018.  Thus, from June 1 to June 30, 2018, Reeves, like all other death-sentenced inmates whose certificates of judgment issued prior to June 1, 2018, could elect execution by nitrogen hypoxia.  Reeves did not make that election during this time-frame.

*2. The midazolam litigation that was dismissed in 2018*

In April 2012, death-row inmate Carey Dale Grayson filed an action under 42 U.S.C. § 1983 challenging the constitutionality of Alabama's lethal injection protocol, alleging that it violated his Eighth and Fourteenth Amendment rights. *See Grayson v. Dunn*, No. 2:12-cv-316-WKW (M.D. Ala. 2012), Doc. 1.  Over time, several other death row inmates filed nearly identical challenges to Alabama's lethal injection protocol. Ultimately, due to common questions of law and fact, these cases were consolidated to promote judicial economy, eliminate duplication of discovery, and avoid unnecessary

costs. *Id.* Additionally, the litigation was recaptioned as *In re: Alabama Lethal Injection Protocol Litigation*, No. 2:12-cv-316-WKW (M.D. Ala. 2012), Doc. 346.[4]

In that litigation, the plaintiffs proposed nitrogen hypoxia as an alternative method of execution. When Alabama added nitrogen hypoxia as an alternative execution method, the plaintiffs' claims in that action were essentially mooted. Indeed, after June 1, 2018, they all elected nitrogen hypoxia, and *In re: Alabama Lethal Injection Protocol Litigation* was dismissed without prejudice on the parties' joint motion to dismiss. *Id.*, Docs. 429-30.

### 3. Distribution of the election form during election period

Defendants state that Reeves was given a nitrogen hypoxia election form but "he was not among the inmates who made the election." (Doc. 11 at 18.)[5] Reeves does not dispute that statement but points out that "[i]f the ADOC distributed an opt-in form, it did so no later than June 26, 2018–four days before the deadline." (Doc. 1 ¶ 33.) Reeves states that no matter when he received the election form, due to his intellectual disability, he was unable to "personally make the decision to elect a method of execution." (Doc. 1 ¶ 34.) To the extent there may be a factual dispute as to when Reeves received the election form, it has no impact on the Court's consideration of Defendants' motion to dismiss Reeves' ADA claim.

---

[4] Reeves was not one of the plaintiffs in the midazolam litigation.

[5] Citations to page numbers in documents filed in this case will be to the page number generated by the Court's CM/ECF system.

*4. No execution protocol developed for nitrogen hypoxia*

When the Alabama Code was amended to add nitrogen hypoxia as a second alternative execution method, and throughout the election period, the ADOC had yet to develop a protocol for performing nitrogen hypoxia executions.  Defendants state that "the ADOC is still in the process of developing a safe protocol. . . ."  (Doc. 11 at 20.)  The lack of a nitrogen hypoxia protocol is immaterial to the Court's consideration of Defendants' motion to dismiss.

**C.  Reeves' Claims**

In his complaint filed on January 10, 2020, Reeves asserts two federal claims:  (1) Alabama's three-drug, lethal injection protocol method of execution violates his right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution; and (2) Alabama violated his statutory rights under the ADA by failing to afford him, an intellectually disabled person, a reasonable accommodation so that he could elect nitrogen hypoxia as his execution method.

**II.  STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id*. at 663 (alteration in original) (citation omitted).

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

### III. DISCUSSION

**A. Eighth Amendment lethal injection claim**

Reeves is subject to execution by Alabama's three-drug, lethal injection protocol. He asserts that the use of midazolam in this protocol violates the Eighth Amendment. Reeves recognizes that in order to challenge Alabama's lethal injection execution method, he must "identify a known and available alternative method of execution that entails a lesser risk of pain." *Glossip v. Gross*, 135 S.Ct. 2726, 2731 (2015). To comply with *Glossip*, Reeves points to nitrogen hypoxia as an alternative to lethal injection. He implies that after Senate Bill 272 became effective on June 1, 2018, he would have elected nitrogen hypoxia as his execution method within the thirty-day window provided, but for his intellectual disability and the ADOC's failure to afford him a reasonable accommodation

9

under the ADA.  He also implies that if afforded a reasonable accommodation, he would have made the nitrogen hypoxia election.

Regardless of the alternative execution method Reeves proposes to Alabama's three-drug, lethal injection protocol, his Eighth Amendment challenge to this protocol is untimely because he failed to raise it within the prescribed limitations period.  "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought," *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).  In Alabama, the statute of limitations applicable to personal injury actions is two years.  *West v. Warden*, 869 F.3d 1289, 1298 (11th Cir. 2017) (citing *McNair*, 515 F.3d at 1173).  *See also*, Ala. Code § 6-2-38(l).  Further, "a method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol."  *McNair*, 515 F. 3d at 1168, 1174.

At the time Reeves was sentenced, Alabama executed inmates by electrocution. On July 1, 2002, Alabama adopted lethal injection as its preferred form of execution and gave inmates already on death row 30 days in which to opt out and select electrocution as the method by which they would die.  Reeves did not opt out of the new protocol; therefore, he became subject to death by lethal injection on July 31, 2002.  *See McNair*, 515 F. 3d at 1171.  Because lethal injection was a new execution protocol, the statute of limitations began to run for Reeves to challenge its constitutionality on July 31, 2002.  Since the applicable statute of limitations is two years, *McNair*, 515 F.3d at 1173, Reeves had to file his challenge by July 31, 2004.

Approximately ten years later, on September 10, 2014, the ADOC substituted midazolam for pentobarbital as the first drug administered in the lethal injection protocol. Assuming that the ADOC's switch to midazolam represented a "new or substantially changed execution protocol[,]" *McNair*, 515 F. 3d at 1168, 1174, that change started the clock again on September 10, 2014, thereby expiring two years later on September 10, 2016.

It is well settled that, when the complaint shows on its face that the limitations period has expired, a statute-of-limitations defense may be raised on a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. Rule Civ. P. 12(b)(6). *See AVCO Corp. v. Precision Air Parts, Inc*., 676 F.2d 494, 495 (11th Cir. 1982) (party may seek dismissal based on statute-of-limitations defense pursuant to Rule 12(b)(6)); *Mann v. Adams Realty Co.*, 556 F.2d 288 (5th Cir. 1977); *Mooney v. Tallant*, 397 F. Supp. 680 (N.D. Ga. 1975).

Consequently, Reeves' Eighth Amendment challenge to the use of midazolam, asserted in his § 1983 complaint filed on January 10, 2020, is time-barred, having expired on September 10, 2016. The addition of nitrogen hypoxia in 2018 as a second alternative execution method to Alabama's primary method of execution–lethal injection–has no impact on the statute of limitations as to the midazolam clock, because a § 1983 claim based on that protocol expired years ago on September 10, 2016.

Although Reeves sufficiently pled an Eighth Amendment claim, it is clear from the face of the Complaint that the claim is time-barred. Reeves' Eighth Amendment claim will be dismissed, not because of insufficient pleading but because it is untimely.

**B.  The ADA claim**

To state a claim under Title II of the ADA, a plaintiff must allege:

> . . . (1) that he is a "qualified individual with a disability;" (2) that he was "excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity" or otherwise "discriminated [against] by such entity"; (3) "by reason of such disability."

*Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132).

Starting from the premise that he is intellectually disabled, Reeves posits that he has satisfied the three-pronged test necessary to state a Title II claim under the ADA, as recounted in *Shotz*.  As to the first prong, Reeves asserts that because of his intellectual disability, he is a "qualified individual with a disability."  Reeves avers that he has satisfied the second prong, again pointing to his alleged intellectual disability, because he was unable to opt-in to nitrogen hypoxia during the 30-day election window; however, Reeves offers no explanation as to *how* his intellectual disability prevented him from making that election.  Reeves contends that he has satisfied the third prong because, given his intellectual disability, he was unable to choose nitrogen hypoxia within the election window "by reason of such disability", but again he offers no explanation to support this conclusory statement.

Defendants counter that Reeves is not intellectually disabled; therefore, he has failed to state a claim under the ADA for which relief can be granted.  To support their argument, Defendants point out that the issue of Reeves' intellectual disability was litigated in Reeves' Rule 32 proceedings in which the Rule 32 court held an evidentiary hearing where both parties presented medical expert testimony concerning his intellectual disability.

Subsequently, the Rule 32 court resolved this claim against Reeves, finding that he had not proved this claim by a preponderance of the evidence. The ACCA affirmed the Rule 32 court's finding. *Reeves v. State*, 226 So. 3d 711, 722 (Ala. Crim. App. 2016).

As previously stated, Reeves then raised his *Atkins* claim in a federal habeas petition filed pursuant to 28 U.S.C. § 2254. The federal district court concluded that he was entitled to no relief thereon. *Reeves v. Dunn*, No. 1:17-cv-061-KD (S.D. Ala. Jan. 8, 2019), Doc. 29. Reeves appealed the denial of his habeas petition to the Eleventh Circuit, which is considering "whether Mr. Reeves is intellectually disabled and therefore ineligible for the death penalty." *Reeves v. Comm'r Ala. Dep't of Corrs.*, No. 19-11779-P (11th Cir. Sept. 19, 2019). Oral argument on this issue and others is scheduled before the Eleventh Circuit on August 19, 2020.

Thus, the issue of whether Reeves is intellectually disabled is unresolved, and it is premature to determine whether the ADA applies. Accordingly, Defendants' motion to dismiss Reeves' ADA claim is denied.

## IV. CONCLUSION

For the reasons stated, it is ORDERED that Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 11), is GRANTED IN PART and DENIED IN PART, as follows:

1. To the extent of Reeves' Eighth Amendment method-of-execution claim (Count 1), Defendants' motion to dismiss is granted because the Eighth Amendment claim is time-barred.

2.  To the extent of Reeves' ADA claim (Count 2), Defendants' motion to dismiss is denied without prejudice because the issue of Reeves' alleged intellectual disability has not been resolved.

DONE, this 4th day of August, 2020.

                                         /s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE