IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MATTHEW REEVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:20-CV-027-RAH |
| | ) | [WO] |
| JEFFERSON S. DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Matthew Reeves (hereinafter "Reeves") is an Alabama death-row inmate in the custody of the Alabama Department of Corrections.  Presently, Reeves is scheduled for execution by lethal injection on January 27, 2022.  On January 10, 2020, Reeves filed a Complaint (Doc. 1) under 42 U.S.C. § 1983, asserting two causes of action against Defendants Jefferson Dunn, Commissioner of the Alabama Department of Corrections, and Terry Raybon, the Warden of Holman Correctional Facility (collectively "the ADOC")[1], in their official capacities, for deprivation of his rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et*

---

[1]  Holman is the primary correctional facility for housing death-row inmates in Alabama and is the only facility in the state that performs executions.

*seq.* ("ADA")[2] and his constitutional rights under the Eighth Amendment to the United States Constitution.  Reeves seeks declaratory and injunctive relief.  (Doc. 1.)

The ADOC moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. (Doc. 11.)  On August 4, 2020, the Court granted this motion in part, dismissing Reeves's Eighth Amendment claim, but denied the motion as to Reeves's ADA claim. (Doc. 17.)  Subsequently, on August 26, 2021, Reeves filed an Amended Complaint, the operative one here, which asserted a revised ADA claim and the same previously-dismissed Eighth Amendment claim. (Doc. 21.)

The ADOC has again moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 23.)  The motion has been fully briefed and is ripe for review. (Docs. 26, 30.)  For the following reasons, the ADOC's motion to dismiss is due to be granted in part and denied in part.

A.     **<u>Reeves's Capital Litigation History</u>**

---

[2] While Reeves's Complaint purports to bring his ADA claim under Section 1983, ADA claims are stand-alone claims with their own remedial structure.  Although Reeves's Complaint suggests that it does, Section 1983 plays no role in the advancement of a claim grounded in rights created under the ADA. *See Holbrook v. City of Alpharetta, Ga*., 112 F.3d 1522, 1531 (11th Cir. 1997) ("a plaintiff cannot maintain a section 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is the [plaintiff's] rights created by the Rehabilitation Act and the ADA.").

In 1998, Reeves was convicted of the capital murder of Willie Johnson and sentenced to death.  Reeves's conviction was affirmed on appeal, concluding when the United States Supreme Court denied Reeves's petition for a writ of certiorari in 2001. *Reeves v. Alabama*, 534 U.S. 1026 (2001).

In October 2002, Reeves filed a new action in state court under Rule 32 of the Alabama Rules of Criminal Procedure and raised an *Atkins* claim pursuant to the Supreme Court's then-recent decision in *Atkins v. Virginia*, 536 U.S. 304 (2002).   In his *Atkins* claim, Reeves alleged that because he was "mentally retarded," the recent *Atkins* decision prohibited his execution.  In November 2006, the trial court held an evidentiary hearing on the claim. *See Reeves v. State*, 226 So. 3d 711, 722 (Ala. Crim. App. 2016).  Ultimately, the trial court concluded that Reeves's intellectual functioning, while subaverage, was not so low that he would meet the first prong of his *Atkins* claim.  It also found that Reeves failed to prove by a preponderance of the evidence that he suffered from significant deficits in at least two areas of adaptative functioning.  All subsequent appeals of this decision proved unsuccessful, ending with the Supreme Court's denial of his petition for a writ of certiorari in 2017. *Reeves v. Alabama*, ____ U.S. ____, 138 S. Ct. 22 (2017) (Sotomayor, J., dissenting).

Reeves then filed a habeas corpus petition in federal court, pursuant to 28 U.S.C. § 2254, again raising an *Atkins* claim.   Ultimately, this petition was unsuccessful as well. *Reeves v. Dunn*, No. 1:17-cv-061-KD, 2019 WL 12469769

(S.D. Ala. Jan. 8, 2019); *Reeves v. Comm'r Ala. Dep't of Corr. Dunn*., No. 19-11779-P (11th Cir. May 7, 2019); *Reeves v. Comm'r Ala. Dep't of Corr. Dunn*., 836 F. App'x 733 (11th Cir. 2020); *Dunn v. Reeves*, 141 S. Ct. 2405 (2021); *Reeves v. Comm'r Ala. Dep't of Corr. Dunn*., 855 F. App'x 657 (11th Cir. 2021).

### B.     Backdrop of the present action

*1.  Nitrogen hypoxia becomes an alternative method of execution*

Until 2018, lethal injection and electrocution were Alabama's two methods of execution. Ala. Code § 15-18-82.1.  In March 2018, Alabama[3] added nitrogen hypoxia as a third method.[4]  The legislative amendment adding nitrogen hypoxia became effective on June 1, 2018, and provided a 30-day window for death-row inmates to select nitrogen hypoxia:

> The election for death by nitrogen hypoxia is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death. If a certificate of judgment is issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date.  If a warrant of execution is pending on June 1, 2018, or if a warrant is issued within 30 days of that date, the person who is the subject of the warrant shall waive election of nitrogen hypoxia as the method of execution unless a written election signed by the person is submitted to the warden of the correctional facility not later than 48 hours after June 1, 2018, or after the warrant is issued, whichever is later.

---

[3] Specifically, Ala. Code §§ 15-18-82(a)-(b) and 15-18-82.1(a)-(c), (f), (i)-(j) were amended.

[4] *See* 2018 Alabama Laws Act 2018-353 (S.B. 272).

Ala. Code § 15-18-82.1(b)(2).

The certificate of judgment affirming Reeves's capital murder conviction was issued prior to June 1, 2018.  Thus, from June 1 to June 30, 2018, Reeves, like all other death-sentenced inmates whose certificates of judgment issued prior to June 1, 2018, had the opportunity to elect execution by nitrogen hypoxia.  Reeves did not make an election during this 30-day time period.

### 2. Distribution of the election form during election period

In this lawsuit, Reeves claims that ADOC staff, as a service, program and activity for death-row inmates, "distributed an Election Form to every death row prisoner, no earlier than June 26, 2018—a mere four days before the statutory deadline." (Doc. 21 at 4, ¶ 23.)   Reeves further alleges that his "cognitive deficiencies" rendered him unable to "personally make the decision to elect a method of execution absent reasonable accommodation." (Doc. 21 at 5, ¶ 29.)

In its motion to dismiss, the ADOC argues that Reeves was given a nitrogen hypoxia election form by ADOC staff but that "Reeves, though represented by at least seven attorneys from two law firms during the election period, did not" execute and return it. (Doc. 23 at 21).[5]  Because he did not sign and timely return the election form, or otherwise elect execution by nitrogen hypoxia in writing, Reeves remains

---

[5] Citations to page numbers in documents filed in this case will be to the page number generated by the Court's CM/ECF system.

scheduled to die by lethal injection, which has now been set for January 27, 2022, despite his claim that he prefers to die by nitrogen hypoxia.[6]

### 3. No execution protocol developed for nitrogen hypoxia

When Alabama added nitrogen hypoxia as an additional execution method in 2018, the ADOC had not yet developed a protocol for performing nitrogen hypoxia executions. That remains true today, as the ADOC still has not developed a nitrogen hypoxia protocol. As a result, the ADOC is not conducting executions of death-row inmates who have elected execution by nitrogen hypoxia. (Doc. 23 at 37 ("Although the ADOC has been working on a hypoxia protocol for more than three years, there is still no working protocol in place . . . .")).

## III. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction of this case pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 2201, and 42 U.S.C. § 12133.

Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## IV. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the legal standard set forth in Rule 8 requiring "a short and plain statement of the

---

[6] Although the Amended Complaint does not explicitly allege it, the parties are in agreement that the Amended Complaint should be construed as alleging that Reeves would have elected in June 2018 to die by nitrogen hypoxia had he been able to utilize the election form. (*See* Doc. 31.)

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions. *Id.* at 664.

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See id.* at 679 (explaining, "only a complaint that states a plausible claim for relief survives a motion to dismiss"). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Id.* This

pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). It is the plaintiff's responsibility to allege sufficient facts to support his claims. *Twombly*, 550 U.S. at 555.

## V. DISCUSSION

In his Amended Complaint, Reeves asserts two claims: (1) the ADOC violated the ADA by failing to afford Reeves, an intellectually and cognitively disabled person, a reasonable accommodation to permit him to timely and properly elect nitrogen hypoxia as his chosen execution method, and (2) Alabama's lethal injection protocol violates Reeves's right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution. (Doc. 21.)

In its motion to dismiss, the ADOC asserts that both claims should be dismissed because Reeves fails to state claims for which relief can be granted. (Doc. 23.) The Court addresses each count in turn.

### A. **Count One – Title II of the ADA**

First, the ADOC moves to dismiss the ADA claim, arguing that the Amended Complaint fails to state an ADA claim upon which relief can be granted. Assuming

8

the allegations in the Amended Complaint to be true, as the Court must, the ADOC's argument lacks merit, and therefore the motion is due to be denied as it concerns the ADA claim.

The ADA was enacted "for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The Act responds to an extensive history of discrimination in public services against individuals with disabilities. *Nat'l Assoc. of the Deaf v. Florida*, 980 F.3d 763, 773 (11th Cir. 2020). Its provisions are to be construed broadly to protect those interests, *Kornblau v. Dade Cnty.*, 86 F.3d 193, 194 (11th Cir. 1996), and provide in pertinent part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Prisons fall within the statutory definition of "public entity" under the ADA. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

To state a claim under Title II of the ADA, a plaintiff must allege facts sufficient to show that (1) he has a disability, (2) he is a qualified individual under the statute, (3) he was denied access to a public benefit, and (4) that the denial was due to his disability. *Kornblau*, 86 F.3d at 194; *see also Goldberg v. Fla. Int'l Univ.*, 838 F. App'x 487, 492 (11th Cir. 2020); *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1081 (11th Cir. 2007). The ADOC challenges each of these elements in its motion.

*1. Disability*

In its motion, the ADOC argues that Reeves has not pleaded that he has a disability under the ADA, that no court has deemed Reeves intellectually disabled, and that the record does not support his claim. (Doc. 23 at 5.)  To the extent the ADOC relies upon any evidence outside of Reeves's Amended Complaint, such as evidence presented at Reeves's trial in 1998 and in his direct appeal, post-conviction, and federal habeas proceedings (*see* Doc. 23 at 6-18), that evidence is inappropriate for consideration at this stage and must be ignored.  This Court can only look to the allegations in the Amended Complaint, and those allegations are sufficient for purposes of pleading disability under the ADA.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, *reading*, *concentrating*, *thinking*, *communicating*, and working."  42 U.S.C. § 12102(2)(A) (emphasis added).

In his Amended Complaint, Reeves claims that he is "a qualified individual with a disability" and that he otherwise "meet[s] the essential eligibility requirements for the receipt of services or the participation in programs or activities

provided by a public entity." (Doc. 21 at 7, ¶ 40.) He supports this assertion with several factual allegations in his Amended Complaint such as:

- "Mr. Reeves had (and has) cognitive deficiencies" (Doc. 21 at 5, ¶ 29)

- Reeves "is cognitively and/or intellectually disabled under the ADA," and (Doc. 21 at 6, ¶ 36)

- Reeves is "disabled for the purposes of the ADA because he suffers a 'physical or mental impairment that substantially limits one or more major life activities.'" (Doc. 21 at 7, ¶ 41)

Reeves goes on to allege that, because of his cognitive and intellectual disabilities, he suffers from substantial impairments that impact life activities of reading, concentrating, thinking, and communicating as evidenced by allegations that "[he] was placed in special education classes" (Doc. 21 at 5, ¶ 30), "[h]e failed the first, fourth, and fifth grades, and was advanced to the seventh grade only via 'social promotion'" and "never advanced beyond middle school" (Doc. 21 at 5, ¶ 31), "[h]e is 'essentially illiterate," and when evaluated at the age of 28, 'still read at only a third-grade level,'" (Doc. 21 at 6, ¶ 32), and "[i]n connection with his Rule 32 proceedings, he had IQ scores of 68 . . . and 71 . . . ." (Doc. 21 at 6, ¶ 33.)

Reeves also claims that "[s]ince 2016, the [ADOC] considers all inmates who, after testing, show an IQ score of 75 or less as intellectually disabled." (Doc. 21 at 6, ¶ 34). Reeves further alleges that as the respondent in his federal habeas proceedings in 2018, wherein he raised an *Atkins* claim, Commissioner Dunn was

fully aware that Reeves's IQ scores were sufficiently low to constitute an intellectual disability by the ADOC's own standard. (Doc. 21 at 6-7, ¶¶ 37-38.)

Taking these allegations as true, and recognizing the breadth of the ADA's definition of "disability," the Court concludes that Reeves has adequately pleaded in the Amended Complaint that he is disabled under the ADA. *See, e.g., Smith v. Dunn*, No. 2:19-CV-927-ECM, 2021 WL 484523, at *6 (M.D. Ala. Oct. 17, 2021) (concluding that death-row inmate met his burden at the preliminary injunction stage as its concerns a cognitive disability under the ADA).

### 2. *Qualified individual*

The ADOC also challenges Reeves's assertion in the Amended Complaint that he is a qualified individual with a disability.

Under Title II, a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

On June 26, 2018, approximately four days before the close of the 30-day election window during which death-row inmates could elect execution by nitrogen hypoxia, ADOC officials distributed an election form to all death-row inmates at Holman prison, including Reeves.  (Doc. 21 at 4.)  Reeves alleges that "[b]efore, on, and after the effective date of Senate Bill 272, [he] had (and has) cognitive

12

deficiencies such that he could not (and cannot) personally make the decision to elect a method of execution absent reasonable accommodation."  (Doc. 21 at 5, ¶ 29.)

These facts plausibly assert that Reeves meets the essential eligibility requirements of a program, service or activity—here, the program, service, or activity created by the ADOC when it distributed election forms to all death-row inmates during the 30-day election window. *See, e.g., Smith*, 2021 WL 484523 at *8 (concluding that death-row inmate who received election form was qualified individual for ADA purposes).

### 3. Exclusion from or denial of the benefits of services, programs, or activities

The third element requires Reeves to plausibly allege that he was excluded from or denied access to a public benefit.  *Bircoll*, 480 F.3d at 1081; *Kornblau*, 86 F.3d at 194.  The ADOC disputes that its decision to provide death-row inmates with the election form constitutes a public benefit subject to the ADA.

A "public benefit" is a "service, program, or activity."  42 U.S.C. § 12132. The Department of Justice's regulations explain that Title II applies to "all services, programs, and activities provided or made available by public entities."  28 C.F.R. § 35.102(a).

Courts nationwide recognize the term "services, programs, or activities" to be a "catch-all phrase."  *See Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 822 (11th Cir. 1998) (citing *Innovative Health Sys., Inc. v. City*

*of White Plains*, 117 F.3d 37, 44–45 (2d Cir. 1997) (overruled on other grounds));
*Am. Council of Blind of N.Y., Inc. v. City of N.Y.*, 495 F. Supp. 3d 211, 230 (S.D.
N.Y. 2020); *Clifton v. Ga. Merit Sys.*, 478 F. Supp. 2d 1356, 1365 (N.D. Ga. 2007)
(disputing but applying the "catch-all" analysis to the phrase "services, programs, or
activities").   Indeed, courts have found the existence of a service, program, or
activity in a broad array of actions by public entities, ranging from weddings at
municipal courts, *see Soto v. City of Newark*, 72 F. Supp. 2d 489, 494 (D.N.J. 1999),
to a prisoner's access to telephone privileges, *see Clarkson v. Coughlin*, 898 F. Supp.
1019, 1046 (S.D.N.Y. 1995).

     Reeves's Amended Complaint sufficiently pleads that the ADOC's provision
of the election form to all death-row inmates in June 2018 was a service, activity, or
program provided to and made available by the ADOC.   Reeves further pleads that
he was excluded from this service, activity, or program because he was not given a
reasonable accommodation to account for his intellectual and cognitive disability,
and therefore he could not understand the language of the form or its repercussions.
(Doc. 21 at 11-12.)   Accepting these  factual allegations as true, and construing the
facts in the light most favorable to Reeves, he has plausibly alleged that he was
excluded from or denied a public benefit.

          *4. Exclusion or denial based on a disability*

14

The final element of an ADA claim requires Reeves to show that he lacked "meaningful access" to a public benefit *because of* his disability. *Alexander v. Choate*, 469 U.S. 287, 301 (1985). The ADOC challenges the sufficiency of Reeves's pleading of this element too.

"When an individual is unable to access services or benefits because of a disability, the ADA requires that the public entity provide reasonable accommodations to ensure that individual is permitted access to the same benefits and services as others." *Arenas v. Ga. Dep't of Corr.*, No. 4:16-cv-320, 2020 WL 1849362, at *11 (S.D. Ga. Apr. 13, 2020). A public entity's duty to provide a reasonable accommodation is not usually triggered until the plaintiff makes a specific demand for an accommodation. *Rylee*, 316 F. App'x at 906 (citing *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir. 1999)).

The ADA does not require public entities to "guess at what accommodation they should provide." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). But an explicit request for a reasonable accommodation may sometimes be unnecessary where "the need for an accommodation is obvious." *Arenas*, 2020 WL 1849362, at *12 (citing *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1327 n.33 (N.D. Ga. 2017)). In other words, where the disability, its limitations, and the plaintiff's necessary reasonable accommodations are "*open, obvious, and apparent,*" an accommodation request is not necessary. *Arenas*, 2020 WL 1849362, at *12 (emphasis added). If

"the defendant otherwise had knowledge of an individual's disability *and needs* but took no action," that is sufficient to trigger a public entity's duty to provide a reasonable accommodation. *Nattiel v. Fla. Dep't of Corr.*, No. 1:15-cv-150-WTH, 2017 WL 5774143, at *1 (N.D. Fla. Nov. 28, 2017) (emphasis added) (quoting *McCoy v. Tex. Dep't of Crim. Just.*, No. 2:05-cv-370, 2006 WL 2331055, at *7 (S.D. Tex. 2006)).

It is not just Reeves's disability that must be obvious; Reeves must also show that his "need" resulting from the disability—the necessary reasonable accommodation—is also obvious.  Therefore, in this failure-to-accommodate case, Reeves must plead either that he requested an accommodation or that the need for an accommodation was obvious yet the ADOC failed to provide one.

Reeves does not allege that he requested an accommodation in June 2018. Instead, he contends that he had and has "a known and obvious disability such that it would be very difficult for him to [use the Election Form] without accommodation." (Doc. 21 at 8, ¶ 44.)  Reeves claims that his intellectual disability was obvious because the ADOC had previously assessed him and because of his previous litigation history with the ADOC regarding his *Atkins* claim.  *Nattiel*, 2017 WL 5774143, at *1 (concluding that the defendant knew of the plaintiff's disability because it had assessed him); *Wolfe v. Florida Dep't of Corr.*, No. 5:10-cv-663, 2012 WL 4052334, at *4 (N.D. Fla. Sept. 14, 2012) (finding that a prison and its agents

had "knowledge of [the plaintiff's] asthma[] and dangers of housing him" in a dormitory where he ultimately had a fatal asthma attack).   As a result of this knowledge, Reeves alleges, the ADOC should have provided a reasonable accommodation so that he could participate in the program or service the ADOC created when it distributed the election form.

Reeves makes several allegations in the Amended Complaint that he contends illustrate the obviousness of his disability, including that "[he] was placed in special education classes," (Doc. 21 at 5, ¶ 30); "[h]e failed the first, fourth, and fifth grades, and was advanced to the seventh grade only via 'social promotion,'" and "never advanced beyond middle school," (Doc. 21 at 5, ¶ 31); "[h]e is 'essentially illiterate,' and when evaluated at the age of 28, 'still read at only a third-grade level,'" (Doc. 21 at 6, ¶ 32), "[i]n connection with his Rule 32 proceedings, he had IQ scores of 68 . . . and 71 . . . ,"  (Doc. 21 at 6, ¶ 33); and, "[s]ince 2016, the [ADOC] considers all inmates who, after testing, show an IQ score of 75 or less as intellectually disabled," (Doc. 21 at 6, ¶ 34).  Reeves further asserts that "[w]ith his borderline IQ, general cognitive limitations, and severely limited reading abilities, it is clear that [he] was unlikely to understand the Election Form without assistance." (Doc. 21 at 6, ¶ 35.) All of these facts, according to the allegations in the Amended Complaint, were known to the ADOC before June 2018 as a result of the litigation concerning Reeves's *Atkins* claim.

In summary, Reeves sufficiently alleges that he is a qualified individual with a known and obvious disability such that it would be very difficult for him to participate, without accommodation, in age appropriate activities and that due to his disability, the election form was not readily accessible and usable by him.  Despite the ADOC's protestations, these allegations are sufficient to satisfy the fourth element of an ADA claim.

All four elements having been satisfied, the Court finds that Reeves has sufficiently pleaded facts to allege a failure-to-accommodate claim under the ADA. The ADOC's motion to dismiss is therefore due to be DENIED as to Count One of the Amended Complaint.

### B.  <u>Count Two – Eighth Amendment Lethal Injection Claim</u>

The ADOC also moves for dismissal of Reeves's Eighth Amendment claim. This claim and the factual contentions that support it are identical to the Eighth Amendment challenge brought by Reeves in his original Complaint.  As to that claim, the Court granted the ADOC's request for dismissal on grounds that the statute of limitations had expired. (*See* Doc. 17.)

There being no new grounds alleged by Reeves as to why the Court erred or should look a second time at this claim, the Court concludes that the claim was properly dismissed the first time and is due to be dismissed once again on statute of

limitations grounds.  Accordingly, the ADOC's motion to dismiss is due to be GRANTED as to Count Two of the Complaint.

## VI. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the ADOC's Motion to Dismiss the Amended Complaint (Doc. 23) is GRANTED IN PART and DENIED IN PART as follows:

1. The Motion is DENIED as to Count One of the Amended Complaint;

2. The Motion is GRANTED as to Count Two of the Amended Complaint; and

3. Count Two of the Amended Complaint is DISMISSED with prejudice.

DONE on this the 24th day of November, 2021.

      /s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE